IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:22-cr-00166-CMA-GPG

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

1.   **ANTHONY JAMES ROMERO,**

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Pete Hautzinger, Assistant United States Attorney for the District of Colorado, and the defendant, Anthony James Romero, personally and by counsel, Jared Westbroek, hereby submit the following Plea Agreement pursuant to District Court of Colorado Local Rule 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I. AGREEMENT

**A. Defendant's Plea of Guilty:**

The defendant agrees:

    (1)   to plead guilty to count 1 of the indictment, and

    (2)   to waive certain appellate and collateral attack rights,

          as explained in detail below.

1

EXHIBIT
1

B. **Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The USAO for the District of Colorado agrees (1) not to pursue further federal criminal charges in the District of Colorado based on the facts outlined in this plea agreement, with the exception of any potential tax charges, and (2) to move to dismiss Counts 2 & 3 of the indictment with prejudice as to this defendant only. The government further agrees that the defendant should receive a three-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a). If the defendant does not engage in prohibited conduct or otherwise implicate USSG § 3C1.1, the government agrees to file a motion requesting that the defendant receive a three-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a). Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment. The parties understand that this agreement is not binding on the Court.

C. **Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum sentence provided in the statute of

conviction, 21 U.S.C. (b)(1)(B);

(2)  the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of **27** or

(3)  the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)  the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)  the defendant was deprived of the effective assistance of counsel; or

(3)  the defendant was prejudiced by prosecutorial misconduct.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence

imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offenses to which this plea is being tendered are as follows:

### Count One: 21 U.S.C. '§ 841(a)(1) and (b)(1)(B)(vi) and 21 U.S.C. § 846

First: two or more persons agreed to violate the federal drug laws;

Second: the defendant knew the essential objective of the conspiracy;

Third: the defendant knowingly and voluntarily involved himself in the conspiracy;

Fourth: there was interdependence among the members of the conspiracy; and

Fifth: the overall scope of the conspiracy involved 40 grams and more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

## II. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 21 U.S.C. '§ 841(a)(1) and

(b)(1)(B)(vi) and 21 U.S.C. ' 846 are: not less than 5 years' imprisonment and not more than 40 years' imprisonment; not more than a $5,000,000 fine, or both; not less than 4 years supervised release; and a $100 special assessment fee.

If a term of probation or supervised release is imposed, any violation of the terms and/or conditions of supervision may result in an additional term of imprisonment.

### III. COLLATERAL CONSEQUENCES

This felony conviction may cause the loss of civil rights including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

### IV. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate and agree as follows:

In late February of 2022, U.S. Postal Inspector Daniel Porter identified a pattern of

5

suspicious packages being mailed from Nogales, Arizona to 478 Bing Street in Grand Junction, Mesa County, Colorado. Beginning on March 31, 2021 through February 25, 2022 at least nine different parcels, all paid for in cash and all weighing approximately three pounds were mailed from Nogales to the Bing Street address. A further search of USPS databases indicates that multiple suspected narcotics proceeds and or bulk cash, were sent from Clifton, CO back to Nogales, AZ shortly around the time of the most recent suspected inbound narcotics parcels.

Further investigation revealed that the Bing Street address was a residence which was occupied by Anthony Romero, his wife Jolene Scarrow Romero and their three young children. Anthony has three previous felony convictions and was sentenced to eight years in prison for the latest. He is clearly prohibited from possessing firearms.

On April 13, 2022 P.I. Porter was notified of another parcel headed from Nogales, AZ to the Bing Street address, weighing approximately three (3) pounds, eight (8) ounces, addressed to "Tony Romero, 478 Bing St, Grand Junction, Colorado 81504" with a return address of "Jessica Martinez, 82 North Terrace Ave, PMB #355, Nogales, AZ 85621" hereafter referred to as the "Subject Parcel", set to be delivered on April 15, 2022. On April 15, 2022 P.I. Porter was able to intercept the parcel at the Grand Junction Processing and Distribution Facility located at 602 Burkey St, Grand Junction, CO 81505. He noted several suspicious things about the parcel, including that it was very heavily taped, that it had paid for in cash and that it had been sent by Priority Mail with a delivery confirmation number, which has a tracking service that allows the sender, recipient, or anyone else with the tracking number to identify the location of the parcel in the mail stream. He then had the parcel examined by a trained drug detecting canine, Merlin,

and handler, Grand Junction Police Department Officer Joey Gonzalez. Three control parcels were placed on the ground along with the suspect parcel. Merlin alerted vigorously to the suspect parcel.

P.I. Porter then submitted a request to search the parcel to Magistrate Judge Gordon Gallagher, which was approved and executed. Inside the parcel P.I. found wrapped inside a black plastic bag was a black and gold knitted shawl, a pink jump rope still inside packaging, and a "infunbebe" brand "flower shape sorter" children's toy which had clearly been repackaged. Secreted inside the center of the flower toy were two black bundles, which were tightly wrapped in black tape and vacuum-sealed, which concealed approximately 391 grams of blue pills labeled "M-30."

On April 19, 2022, at approximately 1:00 p.m., a controlled delivery of the Subject Parcel followed by an anticipatory search warrant of the residence and property located at 478 Bing St, Grand Junction, CO 81504 was executed. Prior to the controlled delivery, all of the seized narcotics and contents that were recovered from the Subject Parcel on April 15, 2022, via the federal parcel search warrant, were removed from the package and inside the Subject Parcel were two decoy and or "sham" plastic bags filled with white powder and sand.

On April 19, 2022, at approximately 1:03 p.m., the Subject Parcel was handed directly to and taken into the residence located at 478 Bing St, Grand Junction, CO 81504, by Jolene Scarrow Romero. Shortly after the Subject Parcel was delivered, the residence at 478 Bing St, Grand Junction, CO 81504 was secured, and Anthony Romero was taken into custody based on a criminal complaint and arrest warrant issued in the State and District of Colorado by US Magistrate Judge Gallagher.

The anticipatory warrant (also approved by Magistrate Judge Gallagher) was then executed at 478 Bing Street. A total of eight fully functional firearms and multiple rounds of ammunition in multiple calibers were recovered. The first firearm seized is a Glock 21, .45 caliber semi-automatic pistol, bearing serial number BBGN946, and according to a Bureau of Alcohol, Tobacco and Firearms, (ATF) Interstate Nexus report, was manufactured by Glock in Austria, then imported by Glock, Smyrna, GA. The second firearm seized is a Taurus mod 605, .357 caliber revolver bearing serial number CT77798, and according to an ATF Interstate Nexus report, was manufactured by Taurus in Brazil, then imported by Taurus International, Miami, FL. The third firearm seized is a Smith & Wesson Mod 61-3 .22 caliber semi-automatic pistol, bearing serial number B64856, and according to an ATF Interstate Nexus report was manufactured by Smith & Wesson in Springfield, MA. The fourth firearm seized is a Smith & Wesson M&P Shield .40 caliber semi-automatic pistol, bearing serial number HWB5693, and according to an ATF Interstate Nexus report was manufactured by Smith & Wesson in Springfield, MA. The fifth firearm seized is a Smith & Wesson M&P 9mm semi-automatic pistol, bearing serial number NBL4675, and according to an ATF Interstate Nexus report was manufactured by Smith & Wesson in Springfield, MA. The sixth firearm seized is a Springfield Armory Saint, multi-caliber semi-automatic pistol, bearing serial number ST208866, and according to an ATF Interstate Nexus report was manufactured by Springfield Armory in Geneseo, Il. The seventh firearm seized was a Maverick 88, 12ga firearm, bearing serial number MV82080V, and according to an ATF Interstate Nexus report was manufactured by Mossburg in Eagle Pass, TX. The eighth firearm seized was a New England Firearms Pardner .410 caliber shotgun, bearing serial number NM218426, and according to an ATF

Interstate Nexus report was manufactured by New England Firearms in Gardner, MA. Aside from the firearms, approximately 700 rounds of ammunition including, .223, .22, .45, .357, .40 and 9mm caliber rounds, 410 and 12-gauge shotgun shells, as well as assorted firearm parts and accessories to including a laser with mount, were all also located in Anthony Romero and Jolene Scarrow Romero's bedroom at 478 Bing St.

The DEA Laboratory in Pleasanton CA conducted forensic analysis of the suspected fentanyl pills seized from the parcel addressed to Anthony Romero on May 13, 2022. That analysis revealed the pills did indeed contain fentanyl and acetaminophen. There was a total of 3,026 pills with a net weight of 328.8 grams. Based on the above, if this case were to go to trial the government would prove that Anthony Romero conspired with his source of supply and others to possess with the intent to distribute fentanyl, a schedule II controlled substance.

The defendant agreed to sit down for a proffer session. The defendant gave substantial information about how he came to be involved in the conspiracy, what his role and actions were and what the role and actions of the other co-conspirators were. The government believes the defendant's statements to have been honest, forthcoming, and complete.

## ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing

Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A. The base offense level for Count One is **28** per §2D1.1(c)(6).

B. There is a **2**-level increase per §2D1.1(b)(1) as the defendant possessed a firearm. The resulting offense level therefore would be **30**.

C. <u>Acceptance of Responsibility</u>: The defendant should receive a **3**-level adjustment for acceptance of responsibility. The resulting offense level therefore would be **27**.

D. <u>Criminal History Category</u>: The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant=s prior convictions. Based on information currently available to the parties, it is estimated that the defendant=s criminal history category would be **IV**.

E. Assuming the criminal history facts known to the parties are correct, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

F. <u>Imprisonment</u>: The advisory guideline range resulting from these calculations for Count One is **100 – 125** months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from **70** months (bottom of Category I) to **162** months (top of Category VI). The guideline range would not exceed,

10

in any case, the cumulative statutory maximums applicable to the counts of conviction.

G.　Fine:　Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be **$25,000 to $250,000**, but not more than **$10,000,000**, plus applicable interest and penalties.

H.　Supervised Release:　Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 2 years but not more than 5 years.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## V.　ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 1-13-23

Anthony James Romero
Defendant

11

Date: 1/13/23

[signature] 
Jared Westbroek
Attorney for Defendant

Date: 2/3/2023

s/ Pete Hautzinger

Pete Hautzinger
Assistant U.S. Attorney